[No. 24762-3-II.   Division Two.   June 9, 2000.]

NATIONAL MERIT INSURANCE COMPANY, *Respondent*, v. ESTHER E. YOST, *Appellant*.

*Wayne C. Fricke* (of *Law Offices of Monte E. Hester, Inc., P.S.*), for appellant.

*Harold B. Field* and *Ronald L. Under* (of *Murray, Dunham & Murray*), for respondent.

SEINFELD, J. — Esther Yost appeals from an order granting National Merit Insurance Company's motion for summary judgment. Yost argues that the trial court erred in relying on an antiexternal stacking clause in her underinsured motorist (UIM) policy to deny her any recovery. Because the clause was neither ambiguous nor in violation of Washing-

ton's UIM statute, and because its plain language indicated an intent to exclude coverage above any coverage provided by another applicable insurance policy, we affirm.

## FACTS

While Yost was riding as a passenger in a car driven by Sonja Bateman, another car collided with it. Yost was injured as a result. The driver of the other car was responsible for the accident but did not have liability insurance. Bateman, however, carried a policy with the National General Insurance Company that provided UIM coverage in the amount of $100,000. Because Yost qualified as an insured under that policy, National General paid her the $100,000 policy limit.

Thereafter, Yost made a claim to her own insurance company, National Merit Insurance Company, for the $50,000 policy limit for UIM coverage. National Merit rejected Yost's claim based on an "anti-external stacking" clause contained in the insurance contract. This clause, also referred to as the "other insurance" clause, reads as follows:

> If there is other applicable similar insurance *we* will pay only *our* share. *Our* share is the proportion that *our* limit of liability bears to the total of all applicable limits. If this policy and any other policy providing similar insurance apply to the same *accident*, the maximum limit of liability under all the policies shall be the highest applicable limit of liability under any one policy. However, any insurance *we* provide with respect to a vehicle *you* do not own shall be excess over any other collectible insurance. Excess means the other limits must be paid before this coverage is available.

Clerk's Papers at 21.

National Merit filed a complaint for declaratory judgment and, subsequently, moved for summary judgment. The court granted National Merit's motion.

Yost appeals, arguing that the trial court erred in granting summary judgment because (1) the antiexternal stacking clause is ambiguous and, thus, the court should con-

strue it in her favor to allow coverage; (2) the language of the clause violates the express language of the UIM statute and, therefore, is unenforceable; and (3) the language of the clause, as interpreted by the average person, contemplates coverage supplemental to any other applicable insurance.

## A.  AMBIGUITY

■ The interpretation of insurance policy language is a question of law; thus, we review the summary judgment determination de novo. *Mid-Century Ins. Co. v. Henault,* 128 Wn.2d 207, 212, 905 P.2d 379, 59 A.L.R.5TH 789 (1995).

■ In construing insurance contracts, our principal function is to determine the parties' intent by examining the contract as a whole. *Mid-Century,* 128 Wn.2d at 213. We must give the policy a fair, reasonable, and sensible construction, not a " 'strained or forced construction' " that would lead to absurd results. *Mid-Century,* 128 Wn.2d at 213 (quoting *E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.,* 106 Wn.2d 901, 907, 726 P.2d 439 (1986)).

■■ We apply the following rules of construction to aid in determining the parties' intent: (1) we construe exclusionary clauses strictly against the insurer; and (2) we enforce clear policy language as written and do not create an ambiguity where none exists. *Mid-Century,* 128 Wn.2d at 213. "An ambiguity exists only 'if the *language on its face* is fairly susceptible to two different but reasonable interpretations.' " *Kish v. Insurance Co. of N. Am.,* 125 Wn.2d 164, 171, 883 P.2d 308 (1994) (quoting *Washington Pub. Util. Dists.' Utils. Sys. v. PUD 1,* 112 Wn.2d 1, 11, 771 P.2d 701 (1989)).

The language of the clause at issue here is not susceptible to two such interpretations. Yost asserts that the language of the clause can be read as saying either (1) the insured's *total recovery* limit under all applicable policies is equal to the highest limit of liability under any one policy,[1] or (2) the

---

[1] This is National Merit's interpretation, as well.

insured is entitled to recover up to that highest limit from *each* policy.[2] The second interpretation is strained, however, and would lead to an absurd result.

Under the second interpretation, an insured could collect under every applicable insurance policy. The clause, then, would not serve as an additional limit on liability; it would merely limit National Merit's liability to the amount stated in the policy. In other words, this interpretation renders the clause redundant and meaningless within the context of the entire policy.

The first interpretation recognizes the intent of the clause as an antiexternal stacking limitation on an insurer's liability where there is another insurer who is also liable for coverage. The second interpretation renders the clause meaningless and is unreasonable. Therefore, no ambiguity exists and, consequently, we must enforce the clear language of the policy as written.

We further note that the court in *Federated American Insurance Co. v. Erickson*, 67 Wn. App. 670, 838 P.2d 693 (1992), which analyzed a clause identical to that at issue here, found no ambiguity. That court held as follows:

> The third sentence of the "other insurance" clause in Ms. Erickson's underinsured motorist endorsement is unambiguous in limiting the underinsured motorist coverage to the highest applicable policy amount. The fourth sentence provides Ms. Erickson's policy will only make up the difference between the recoverable amount under the primary policy and the highest applicable policy amount when only nonowned vehicle coverage is involved.

*Federated Am.*, 67 Wn. App. at 673-74. Thus, the trial court did not err in reading the clause as denying coverage.

---

[2] National Merit takes the interpretation one step further, arguing that it would require all applicable policies to pay out $100,000 because this is the highest limit available among the policies. And, in this case, it would require National Merit to pay twice what the policy has stated is its limit. However, this does not appear to be an accurate statement of Yost's argument. Rather, she states that her "recovery limit under *each* applicable policy is *not to exceed* the highest applicable limit of liability under any one policy." (Some emphasis added.)

## B.   Compliance With Statute

■ The Washington Supreme Court has established a two-part test for examining the validity of UIM exclusionary clauses: Does the proposed exclusion conflict with the express language of the UIM statute? If not, is the exclusion contrary to the UIM statute's declared public policy? *Greengo v. Public Employees Mut. Ins. Co.*, 135 Wn.2d 799, 806, 959 P.2d 657 (1998) (citing *Bohme v. PEMCO Mut. Ins. Co.*, 127 Wn.2d 409, 412, 899 P.2d 787 (1995)). The court will approve an exclusionary clause only if it can answer both inquiries in the negative. *Greengo*, 135 Wn.2d at 806.

Yost argues that the clause at issue here conflicts with the express language of the statute because it refers to the maximum "limit" of liability in the singular while the statute uses the term "limits." Washington's UIM statute states: "The policy may provide that if an injured person has other similar insurance available to him under other policies, the total *limits* of liability of all coverages shall not exceed the higher of the applicable limits of the respective coverages." RCW 48.22.030(6) (emphasis added).

■ ■ This statute authorizes insurers to prohibit "external stacking," which is the practice of adding together different policy coverages to increase available coverage limits. *Greengo*, 135 Wn.2d at 806. In the UIM context, the term "similar insurance" is appropriately understood to be other underinsured motorist insurance coverages. *Greengo*, 135 Wn.2d at 806-07. Therefore, RCW 48.22.030(6) authorizes an exclusionary clause that limits the total UIM liability per accident to the single highest UIM liability when an insured is covered under more than one UIM policy. *Greengo*, 135 Wn.2d at 807.

Antiexternal stacking limitations that are either identical or virtually identical to the one at issue here have been upheld as consistent with our UIM statute. In *Anderson v. American Econ. Ins. Co.*, 43 Wn. App. 852, 859-60, 719 P.2d 1345 (1986), the court found that RCW 48.22.030(6) "permits the limitation of recoverable underinsured motorist

payments to the highest limit of any of the applicable policies." Then, quoting two of the sentences in the clause at issue, which are identical to the third and fourth sentences in the National Merit clause, the court found the clause to be consistent with the statute. *Anderson*, 43 Wn. App. at 859-60.

In *Doyle v. State Farm Insurance Co.*, 61 Wn. App. 640, 811 P.2d 968 (1991), the clause at issue was functionally equivalent to the National Merit clause. That clause stated:

> If this policy and any other policy providing *underinsured motorist* coverage apply to the same loss, the maximum limit of liability under all policies will be the highest limit of liability that applies under any one policy. If other *underinsured motorist* coverage applies, we'll pay only our fair share of the loss. That share is our proportion of the total *underinsured motorist* insurance that applies to the loss. But any insurance we provide when *you* or a *covered person* use a vehicle *you* don't own will be excess over any other collectible insurance.

*Doyle*, 61 Wn. App. at 642. The *Doyle* court held that this clause was consistent with the "anti-stacking" limitations authorized by RCW 48.22.030(6). 61 Wn. App. at 642.

Yost's argument that the statute's use of the plural "limits" demonstrates merely an intent to cap the amount of coverage recoverable from *each* applicable policy is incorrect. Thus, National Merit's use of the singular "limit" is not inconsistent with the statute's express language.

Yost makes no argument with regard to the second question posed above. Thus, there is no contention that the National Merit clause is contrary to the UIM statute's declared public policy.

## C. Plain Language

Finally, Yost argues that the language of the "anti-external stacking" clause, if interpreted in a way that would be understood by an average person, contemplates coverage "supplemental to and in addition to any other applicable insurance."

The clause is neither ambiguous nor inconsistent with the UIM statute. Its purpose is to limit the liability of a secondary insurer to the difference between the amount paid out by the primary insurer and the amount allowed by the applicable policy with the highest limit. And the plain meaning of the fourth sentence in the clause, beginning with "However," does not create an exception to the antistacking provision that would grant additional coverage after the primary coverage is exhausted. *Federated Am.*, 67 Wn. App. at 672-73. Rather, the plain language clearly indicates the opposite: there is no supplemental insurance over and above the highest amount available under all applicable policies. Thus, the trial court did not err in granting summary judgment to National Merit.

Accordingly, we affirm.

MORGAN and HOUGHTON, JJ., concur.

Review denied at 142 Wn.2d 1011 (2000).