IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| ETHEL FAY LONG and MELVIN LEROY LONG, husband and wife, | ) ) ) | No. 77695-9-I |
| Appellants, | ) ) | |
| v. | ) ) | |
| RITE AID HEADQUARTERS CORP. and RITE AID CORP., | ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: March 25, 2019 |

VERELLEN, J. — When a physician prescribes medication for their patient, it is the physician—a learned intermediary—and not the pharmacist who has the duty to advise the patient of potential adverse effects. Because Rite Aid had neither a general common law nor a statutory duty to warn Ethel Long about the potential adverse side effects of a prescribed medication, the trial court did not abuse its discretion in denying Long's motion for reconsideration of summary judgment.

Therefore, we affirm.

## FACTS

On December 31, 2012, Long went to the emergency room at Swedish Medical Center for tooth pain. Dr. David Karch prescribed the antibiotic, clindamycin, to treat Long's tooth abscess. Long filled the prescription at her local Rite Aid. The United States Food and Drug Administration warns that (1) if a patient develops

diarrhea during or after taking clindamycin, they need to contact a doctor immediately and (2) if a patient develops diarrhea, they should not take antidiarrheal products.

On January 2, 2013, dentist Dr. Alecia Nowak extracted Long's infected tooth. On January 16, 2013, Long traveled to Atlanta. After arriving in Atlanta, Long developed diarrhea. Long took Imodium, an antidiarrheal product, when her diarrhea worsened. Over the next week, Long became progressively ill. On January 31, 2013, Long's husband took her to a walk-in clinic. The clinic called an ambulance to take Long to Emory University Hospital in Atlanta. At Emory, doctors removed Long's large colon and performed an ileostomy.

On December 24, 2015, Long sued Dr. Karch, Eastside Emergency Physicians, Swedish Medical Center, Dr. Nowak, and Rite Aid.[1] Long alleged Rite Aid had a duty to warn her about the potential adverse side effects of clindamycin. On September 22, 2017, the trial court granted Rite Aid's motion for summary judgment and dismissed Long's claim. On September 28, 2017, the court denied Long's motion for reconsideration.

Long appeals.

## ANALYSIS

Long contends the trial court abused its discretion when it denied her motion for reconsideration of the court's summary judgment order.[2]

---

[1] Long's claims against other parties have been resolved. Rite Aid is the sole remaining party on appeal.

[2] Long assigns error only to the trial court's denial of her motion for reconsideration.

We review summary judgment orders de novo.[3]  Summary judgment is appropriate if "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law."[4]  But we review a trial court's decision of a reconsideration motion for abuse of discretion.[5]  A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons.[6]

Long contends her claim against Rite Aid is exclusively governed by chapter 7.70 RCW.  Under RCW 7.70.030(1), to prove damages for a health care injury, the plaintiff must show "[t]hat injury resulted from the failure of a health care provider to follow the accepted standard of care."  RCW 7.70.040(1) further defines breach of the standard of care as the "fail[ure] to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the State of Washington, acting in the same of similar circumstances."

Long claims Rite Aid breached the accepted standard of care when its pharmacists failed to warn her of the adverse side effects of clindamycin.  Long relies on the patient counseling requirement from WAC 246-869-220.  WAC 246-869-220(1) requires the pharmacist to "directly counsel the patient or patient's agent on

---

[3] Smith v. Safeco, Ins. Co., 150 Wn.2d 478, 483, 78 P.3d 1274 (2003) (quoting Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002)).

[4] CR 56(c).

[5] Federal Home Loan Bank of Seattle v. RBS Securities, Inc., 3 Wn. App. 2d 642, 648, 418 P.3d 168 (2018).

[6] Id.

the use of drugs or devices." And section (3) mandates the pharmacist to "determine the amount of counseling that is reasonable and necessary under the circumstance[s]."

In opposition to Rite Aid's motion for summary judgment, Long submitted a declaration from Jeffery Tichenor, a pharmacist licensed to practice in Washington. In his declaration, Tichenor stated, the counseling requirement from WAC 246-869-220 "at a minimum must include the most significant warnings of the drug."[7] Tichenor also stated, "The standard of care required the pharmacist to counsel Mr. Long that if persistent diarrhea occurred during or even after the clindamycin treatment, Mrs. Long needed to tell a doctor immediately and avoid taking anti-diarrheal medication."[8]

In granting Rite Aid's motion for summary judgment, the court relied on McKee v. American Home Products, Corp.[9] In McKee, the plaintiff alleged the pharmacists were negligent in selling her a drug without warning her of its adverse side effects or giving her the manufacturer's package insert.[10] Similar to the current case, the pharmacists in McKee moved for summary judgment dismissing the plaintiff's claims, arguing they had no duty to warn the plaintiff of the adverse side effects of a prescription drug.

As a preliminary matter, our Supreme Court determined an affidavit from an out-of-state physician was insufficient to establish the standard of care in Washington

---

[7] Clerk's Papers (CP) at 269.

[8] CP at 270.

[9] 113 Wn.2d 701, 782 P.2d 1045 (1989).

[10] Id. at 704.

and defeat summary judgment.[11] Long attempts to distinguish McKee by arguing she presented sufficient expert testimony from Tichenor concerning the accepted standard of care. But in McKee, although our Supreme Court affirmed the summary judgment order because McKee failed to present sufficient expert testimony, the court decided "it [was] appropriate that we discuss the merits of the primary issue raised."[12]

Long interprets McKee as allowing a claim under RCW 7.70.040 for breach of the standard of care when a pharmacist fails to warn a patient of the potential adverse side effects of a prescription medication. Long contends our Supreme Court implicitly held that if the plaintiff provides sufficient expert testimony concerning the standard of care, there is a viable claim under RCW 7.70.040. But this argument ignores the explicit analysis in McKee under RCW 7.70.040.

> Although a pharmacist's duty to warn of potential hazards associated with a prescription drug is an issue of first impression in Washington, we choose to join the majority of those states with statutes similar to RCW 7.70.040 which have addressed this issue holding that a pharmacist has no duty to warn.[13]

This holding lines up with Washington's adherence to the learned intermediary doctrine. Under the learned intermediary doctrine, the duty to warn a patient of the adverse side effects of a medication rests solely on the physician. "'It is the physician who is in the best position to decide when to use and how and when to inform his patient regarding risks and benefits pertaining to drug therapy.'"[14] Although

---

[11] Id. at 706-07.

[12] Id. at 707.

[13] Id. at 707-08.

[14] Id. at 711 (quoting W. KEETON, R. KEETON & D. OWEN, PROSSER & KEETON ON TORTS § 96 at 988 (5th ed. 1984)).

pharmacists have "a duty to accurately fill a prescription, and to be alert for clear errors and mistakes," pharmacists do not "have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug."[15]

The duty to warn about potential adverse side effects must be the sole obligation of the prescribing physician because the physician "may often have valid reasons for deviating from the drug manufacturer's recommendations based on a patient's unique condition."[16] Additionally, excessive warnings by a pharmacist "could cause unfounded fear and mistrust of the physician's judgment, jeopardizing the physician-patient relationship and hindering treatment."[17]

> Requiring the pharmacist to warn of potential risks associated with a drug would interject the pharmacist into the physician-patient relationship and interfere with ongoing treatment. We believe that duty, and any liability arising therefrom, is best left with the physician.[18]

The pharmacist lacks the necessary knowledge concerning a patient's medical background "to question the physician's judgment regarding the appropriateness of each customer's prescription."[19] For example, physicians sometimes prescribe medication for an off label use. "Off-label prescription of drugs occurs when a doctor

---

[15] Id. at 720.

[16] Id. at 716.

[17] Id. at 717.

[18] Id. at 712.

[19] Id. at 716.

prescribes a drug in any manner that varies from labeling specifications."[20] A pharmacist would rarely know whether the physician intends an off label use.

Whenever a physician prescribes a medication, it must be the physician who determines the appropriate warnings because the physician, and not the pharmacist, has the relevant knowledge concerning the patient's medical history and the physician's intended use of the medication.

Long contends that although our Supreme Court has previously added duties beyond those recognized under the current standard of care,[21] the court would never remove a duty recognized at common law. First, Long fails to provide any authority supporting this supposition.[22] Second, in making this argument, Long again ignores our Supreme Court's explicit determination in McKee that a pharmacist's failure to warn a patient about the potential adverse side effects of a medication does not give rise to a claim under RCW 7.70.040.

Long also attempts to sidestep McKee by arguing WAC 246-869-220 imposes a duty to warn on pharmacists. At the time the court decided McKee, former WAC 360-16-265 (1989) required pharmacists to "explain to the patient or the

---

[20] Steven R. Salbu, *Off-Label Use, Prescription and Marketing of FDA-Approved Drugs: An Assessment of Legislative and Regulatory Policy*, 51 FLA. L. REV. 181, 189 (1999).

[21] See, e.g., Helling v. Carey, 83 Wn.2d 514, 518-19, 519 P.2d 981 (1974) (Under the undisputed standard of care, ophthalmologists were not required to give pressure tests for glaucoma to patients under the age of 40. But our Supreme Court held, as a matter of law, "reasonable prudence required the timely giving of the pressure test to this plaintiff.").

[22] RAP 10.3(a)(6); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

patient's agent the directions for use and any additional information." The regulation also stated, "[W]here it is appropriate . . . when dispensing refill prescriptions, the pharmacist shall communicate with the patient or the patient's agent . . . *regarding adverse effects.*"[23] Although McKee does not specifically mention WAC 360-16-265, our Supreme Court concluded, "Nothing in RCW 18.64 nor in WAC 360-16 requires pharmacists to disclose all contraindications or warnings."[24]

Our Supreme Court issued McKee in November 1989. In June 1992, the Department of Health, the state agency responsible for regulating pharmacists, repealed and replaced WAC 360-16-265 with WAC 246-869-220. In Silves v. King, which was decided in 1999, after WAC 246-869-220 went into effect, this court relied on McKee when it determined a pharmacist did not have a duty to warn a patient of potential drug interactions.[25]

More recently, in Luke v. Family Care & Urgent Medical Clinics, the Ninth Circuit determined the counseling requirement contained in WAC 246-869-220 does not include the duty to warn the patient of the potential adverse side effects associated with a prescription medication.[26] [27] The court stated, "The plain language

---

[23] Former WAC 360-16-265 (1989) (emphasis added).

[24] McKee, 113 Wn.2d at 718.

[25] 93 Wn. App. 873, 880, 970 P.2d 790 (1999) (quoting id. at 720).

[26] 246 Fed. Appx. 421 (9th Cir., 2007).

[27] Both parties cite Luke, an unpublished opinion from the United States Court of Appeals, Ninth Circuit. Under GR 14.1, "A party may cite as an authority an opinion designated 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like that has been issued by any court from a jurisdiction other than Washington state, only if citation to that opinion is permitted under the law of the jurisdiction of the issuing court." Under the Federal Rules of Appellate Procedure, Rule 32.1, "A court may not prohibit or restrict the citation of federal judicial opinions,

of the regulation restricts a pharmacist's role to counseling concerning the safe and effective administration of the medication, and does not impose any regulation to explain medical risks."[28]

As a matter of law, Rite Aid had neither a general common law nor a statutory duty to warn Long of the potential adverse side effects of clindamycin. We conclude the trial court did not abuse its discretion in denying Long's motion for reconsideration of the court's summary judgment order.

Therefore, we affirm.

WE CONCUR:

---

orders, judgments, or other written dispositions that have been: (i) designated as 'unpublished,' 'not for publication,' 'non-precedential,' 'not precedent,' or the like; and (ii) issued on or after January 1, 2007." The Ninth Circuit issued Luke on August 21, 2007.

[28] Luke, 246 Fed. Appx. at 425.